ALLEN C. WADE, Plaintiff in Error, *v.* WILLIAM T. MOFFETT and DAVID S. MOFFETT, Defendants in Error.

ERROR TO MACON.

Where by the terms of a public sale, a credit of nine months was to be given to a purchaser if he gave approved security, and A. purchased a mule, without complying with the terms of sale, or taking possession of the mule, it was held, that the vendor after the credit expired, might recover the price of the mule, without delivering or offering to deliver to the purchaser; the law gave the vendor a lien which he was not bound to relinquish, unless the terms of sale were complied with.

THIS was an action of assumpsit brought by the defendants to recover the price and value of a mule bargained, sold and delivered by the defendants to the plaintiff.

Plea of general issue; trial by jury.

It was in proof that the Moffets had a public sale, and among other property, a mule was put up for sale and was struck off to plaintiff for $89. That the terms of sale were a credit of nine months, with bond and approved security; that plaintiff did not comply with the terms of sale, and never took possession of the mule.

The court instructed the jury for the defendants, That if they believed, from the evidence, that the plaintiff bid off the mule at

defendants' sale, that that was a contract of sale between the parties, and the defendants had a right to compel the plaintiff to take the mule.

That if the plaintiff afterwards failed or refused to comply with the conditions of the sale, by giving bond and security, that that was his own wrong, of which he could not take advantage, and that his failing to give bond and security, could not affect the defendants' right to sue for and recover of the plaintiff, the price which he had agreed by his bid to give for the mule.

The court refused to instruct the jury for the plaintiff, that " if they believed, from the evidence, that the plaintiff bid off the mule in controversy at the sale, and that the terms of sale were a credit of nine months with approved security, and that the mule was not to be delivered until such terms were complied with by the purchaser, then such bid of itself did not vest the property in the mule in the plaintiff, and the defendants are not entitled to recover."

That if the jury believe, from the evidence, that the defendants kept the mule in their possession awaiting the compliance of the plaintiff with the conditions of the sale, and that the delivery of the mule and the execution of a bond by the plaintiff with approved security for the purchase price were to be concurrent acts, then the defendants are not entitled to recover until they first offer to deliver or tender the mule.

There was a verdict for defendant below, and a judgment for $89. The cause was heard before EMERSON, Judge.

POST & TUPPER, for Plaintiff in Error.

A. B. BUNN, for Defendants in Error.

BREESE, J. This is a declaration in assumpsit, and the first count is for a mule bargained and sold, and the other is for a mule bargained, sold and delivered to the defendant. The verdict is general, for the plaintiffs.

The questions presented are, do the facts proved amount to a sale of the mule, and were the instructions given for the plaintiff proper, and those asked by the defendant, properly refused.

It is a general rule of the common law as to sale of chattels that, as between the vendor and vendee no actual delivery, symbolical or otherwise, is necessary—the completion of the bargain being all that is requisite to pass the title, though not the possession, until the price be paid or satisfactorily arranged.

In Noy's Maxims, as quoted by Lord Ellenborough, C. J., in *Hinde* v. *Whitehouse and Galan*, 7 East, 558, it is said, " If

I sell my horse for money, I may keep him until I am paid; but I cannot have an action of debt until he be delivered; yet the *property* of the horse is *by the bargain* in the bargainor or buyer. But if he do presently tender me my money, and I do refuse it, he may take the horse, or have an action of detainment. And if the *horse die in my stable between the bargain and delivery*, I may have an action of debt for my money, because by the *bargain, the property was in the buyer.*" So in 2 Blackstone's Com. 448, citing Noy's.

Kent says, (2 Com. 491,) When the terms of sale are agreed on, and the bargain is struck, and everything that the seller has to do with the goods is complete, the contract of sale becomes absolute as between the parties, without actual payment or delivery, and the property and the risk of accident to the goods vest in the buyer.

In Meigs (Tenn.) Rep. 26, *Potter* v. *Cowand*, it is said, It is not the delivery or tender of the property, nor the payment or tender of the purchase money, which constitutes a sale. The sale is good and complete so soon as both parties have agreed to the terms—then the rights of both are instantly fixed. But to have his action for the price, the seller must deliver or offer to deliver the property. If he tenders a delivery of the property, and demands the purchase money, he may have his action of debt or assumpsit if it be refused.

In *Willis* v. *Willis's Adm'r*, 6 Dana, 48, the doctrine was declared that a sale of goods becomes absolute—the property vested in the buyer and at his risk, as soon as the bargain is concluded, without actual payment or delivery.

In *Tarling* v. *Baxter*, 13 Eng. C. Law R. 199, the court say, " The rule of law is, that where there is an immediate sale, and nothing remains to be done by the vendor as between him and the vendee, the property in the thing sold vests in the vendee, and then all the consequences resulting from the vesting of the property follow; one of which is, that if it be destroyed, the loss falls on the vendee."

So in *Gardner* v. *Howland et al.*, 2 Pick. 602; *Shumway et al.* v. *Ritter*, 8 ib. 443; *Parsons* v. *Dickenson et al.*, 11 ib. 352.

The same doctrine is recognized in North Carolina. *The State* v. *William Fuller*, 5 N. Car. R. 26.

So in Ohio the court say, in *Hooben* v. *Bidwell*, 16 Ohio R. 510, The civil law required a delivery, and so it has been said did the common law. But we think delivery not necessary by the common law to pass the title to personal property; that a sale without it is complete as between the parties, though it be not, so as to affect the interests in certain cases of third persons.

In New Hampshire, *Ricker* v. *Cross*, 5 N. H. R. 571, the court say, " The general rule is, that the delivery of possession is necessary in a conveyance of personal chattels as against every one except the vendor. Between the vendor and the vendee, the property will pass without delivery, but not with respect to third persons who may afterwards, without notice, acquire a title to the goods under the vendor. An actual delivery by the vendor to the vendee is not, in all cases, necessary."

So in Maine, *Wing* v. *Clark et al.* 24 Maine R. 366, it is held that, " When the terms of sale of personal property are agreed on and the bargain is struck, and everything the seller has to do with the goods is complete, the contract of sale becomes absolute without actual payment or delivery, and the property in the goods is in the buyer ; and if they are destroyed by accidental fire, he must bear the loss." So in *Bradeen* v. *Brooks et al.*, 22 Maine R. 470.

A party becomes a *buyer* when goods are knocked down to him at an auction. Hilliard on Sales, 323.

In the case of *Lansing et al.* v. *Turner et al.*, 2 Johnson, 15, the court held to the rule as laid down by Blackstone ; and Thompson, J., says, " This I apprehend to be the rule in all cases on the sale of a specific chattel, where the identity of the article cannot be controverted. The inference of law being that the vendor is a mere bailee, retaining the possession at the request of the vendee."

Numerous other cases might be cited to the same purport, recognizing the rule of the common law.

Whether the sale was complete, was a question of fact for the jury. See *Kidder* v. *McKnight*, 13 Johnson, 293 ; *Shurtliff* v. *Willard*, 19 Pick. 209; *Houdlette* v. *Tallman*, 14 Maine R. 400.

In this case, the sale was at auction on nine months time, the purchaser giving bond and security. At the time of bidding, the mule was struck off to Wade at eighty-nine dollars, and his name was entered by the witness as the purchaser, in the memorandum kept by him. The witness saw the mule about the plaintiff's premises for two or three weeks after the sale, sometimes in the field and sometimes in the road.

Another witness stated that he was present at the sale, and had a conversation with Wade, in which he proposed to purchase a mule of him. Wade told him if he did not buy a mate for his mule at the sale, he would sell him his, and after the sale Wade declined selling.

This was all the testimony for the plaintiffs, and it appears from it, there was a complete agreement to buy on the terms proposed—" a bargain was struck," and there can be no doubt, had Wade tendered the security and demanded the mule, he

could have recovered in trover or replevin on refusal by Moffett to deliver it up.

It was proved by Richard Hust on the part of Wade, that ten days after the sale he had a conversation with one of the plaintiffs, Thomas Moffett, in which Moffett asked him if he had heard the defendant say anything about taking the mule, to which he replied, that the defendant told him he should not take it, as there was unfairness at the sale. Moffett said he could make him take it, and that he intended to make him do so. Witness then asked Moffett if he would sell the mule, who said he would, and stated the terms on which he would sell to witness, being the same as the terms at the auction sale. No sale was made. This is all the testimony in the case.

It is certain the terms of the sale at which Wade bought, could be released in favor of Wade by the Moffets, they were not obliged to insist on a bond and security, but having the mule in their possession on which they retained a lien, they could give to Wade the stipulated credit without other security if they chose to do so. The property was Wade's, but he had no right to the possession of it until he had complied with the terms of the sale, or otherwise satisfied the price. Moffetts had a right to keep the mule until they were paid or made secure, but had no right to sell to another without first having notified Wade that they should do so, if he did not comply with the terms of the sale. But it would seem they could not have an action against Wade for the price, even after the term of credit had expired, according to the rule in Noy's Maxims, until they had delivered the mule to Wade, or tendered him, and the case of *Potter* v. *Cowand*, Meigs, 26, above referred to, proceeds on this ground. The other cases do not, and we think as the sale was perfect between Moffetts and Wade, the Moffetts could sue for the price after the credit expired, without a delivery or offer to deliver, because the law giving them a lien on the mule, it would be unreasonable to require them to relinquish it before they were paid the price agreed. According to the cases cited, had the mule died, or been lost, Wade would have to bear the loss.

It is argued that the Moffetts should have given Wade notice to take the mule, and give his bond and security by a day named, and if he did not, they would sell the mule at public sale, and charge him with the difference in the price if the sale was at a loss, and so too, after the term of credit had expired. This the plaintiffs might have done. Chitty on Contracts, 431. They had an option, and having chosen to sue, and the instructions to the jury being right, we cannot interfere.

The judgment is affirmed.

*Judgment affirmed.*