# S. C. J. Russell, Appellant, v. J. W. Sammons, Appellee.

AUCTIONS AND AUCTIONEERS, § 6*—*when sale is complete.* Where, under the terms of a public sale as stated in the bills advertising it and by the auctioneer before commencing the sale, on all amounts in excess of $10 a credit of three, six or nine months will be given the purchaser giving a bankable note drawing six per cent interest from the date of the sale before removing the property, and two heifers are struck off to a purchaser at $50 each, such sale became complete on the fall of the hammer, and the seller could not thereafter resell notwithstanding he retained possession of them until the purchaser could tender security for the purchase price as required by the terms of sale and notwithstanding such purchaser failed to furnish the price on the day at which he stated he would.

Appeal from the Circuit Court of Hancock county; the Hon. ROBERT J. GRIER, Judge, presiding. Heard in this court at the October term, 1919. Reversed and remanded. Opinion filed April 27, 1920.

SAMUEL NAYLOR and O'HARRAS, WOOD & WALKER, for appellant.

SCOFIELD, HARTZELL & CALIFF, for appellee.

MR. JUSTICE WAGGONER delivered the opinion of the court.

Appellant brought an action of replevin, before a justice of the peace against appellee, to recover possession of two Holstein heifers. The case was taken, by appeal, to the circuit court, where a jury returned a verdict for appellee and a judgment was entered thereon.

Appellee held a public sale, on his farm, in Hancock county, Illinois, on Friday October 12, 1917. Two Holstein heifers, one belonging to appellee and

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the other to his son, were struck off to appellant at fifty dollars each.

Appellant testified that after the sale he had a talk with appellee and made arrangements whereby he was to leave the heifers with appellee, and return for them on the next Sunday or the first of the week following the day of the sale, with a note for one hundred dollars signed by himself, together with William Dailey, Richard Wright or E. V. Lenix, as sureties; that he did return on Tuesday October 16, with a note signed by himself and William Dailey, but did not find appellee at home; that he left the note with appellee's wife who refused to let him have the heifers; that he told the wife that he would come back for the heifers on Sunday October 21; that he did go back on that day, saw appellee, demanded the heifers and on such demand being made the only answer he received was, ''Here take your note and go to hell with it''; that he refused to take the note, left the place and two days later brought this suit.

Appellee testified that appellant merely asked to leave the heifers until Sunday October 14; that he (appellee) consented to it, remained at home all that day and appellant did not come for them; that on Tuesday October 16, he sold his heifer to his son; that on Sunday October 21, he told appellant he had sold them because he did not think he (appellant) was going to take them; that he offered appellant the note, told him to go to hell with it, but appellant would not take the note.

Appellee's sale was advertised by bills posted in the vicinity. The terms of the sale, as stated in the bills, and by the auctioneer prior to the commencement of the sale, were that all sums of ten dollars and under were to be cash. On all amounts in excess of ten dollars a credit of three, six or nine months would be given by the purchaser giving a bankable note

drawing six per cent interest, from the date of sale, before removing property.

Appellee, in his brief, says: "The sale did not become complete at the fall of the auctioneer's hammer as appellant contends. * * * In this case the terms of sale were 'all sums of $10.00 and under, cash; over that amount a credit of 3, 6 or 9 months will be given, purchaser giving a bankable note drawing 6 per cent interest from date of sale, before removing property.' And the further terms agreed upon between appellant and appellee which the jury have by their verdict determined were as follows, 'that the appellant agreed to return and accept the property on the Sunday following the sale.' The sale was not complete until all these terms had been complied with by both parties. *Morgan v. East,* 126 Ind. 42."

The case of *Morgan v. East* is not in point. In that case the purchaser was to give a note, with security, drawing interest and offered to pay cash in lieu of giving a note. His offer was not a compliance with the terms of the sale, and he was, for that reason, not entitled to possession of the property.

In the case of *Wade v. Moffett,* 21 Ill. 110, Moffett had a public sale at which a mule was struck off to Wade for eighty-nine dollars. The terms of sale were a credit of nine months with approved security. Wade did not comply with the terms of the sale and never took possession of the mule. Moffett brought assumpsit to recover the price of the mule and secured a judgment for eighty-nine dollars. On error the judgment was affirmed and the court said: "The questions presented are, do the facts proved amount to a sale of the mule, and were the instructions given for the plaintiff proper, and those asked by the defendant, properly refused. It is a general rule of the common law as to sale of chattels that, as between the vendor and vendee no actual delivery, symbolical

or otherwise, is necessary—the completion of the bargain being all that is requisite to pass the title, though not the possession, until the price be paid or satisfactorily arranged. In Noy's Maxims, as quoted by Lord Ellenborough, C. J., in *Hinde v. Whitehouse and Galen,* 7 East, 558, it is said: 'If I sell my horse for money, I may keep him until I am paid; but I cannot have an action of debt until he be delivered; yet the property of the horse is by the bargain in the bargainor or buyer. But if he do presently tender me my money, and I do refuse it, he may take the horse, or have an action of detainment. And if the horse die in my stable between the bargain and delivery, I may have an action of debt for my money, because by the bargain, the property was in the buyer.' So in 2 Blackstone's Com. 448, citing Noy's. Kent says (2 Com. 491): When the terms of sale are agreed on, and the bargain is struck, and everything that the seller has to do with the goods is complete, the contract of sale becomes absolute as between the parties, without actual payment or delivery, and the property and the risk of accident to the goods vest in the buyer.''

The court here commented on a large number of authorities to the same effect and continuing said: "In this case, the sale was at auction on nine months' time, the purchaser giving bond and security. At the time of bidding, the mule was struck off to Wade at eighty-nine dollars, and his name was entered by the witness as the purchaser, in the memorandum kept by him. The witness saw the mule about the plaintiff's premises for two or three weeks after the sale, sometimes in the field and sometimes in the road. Another witness stated that he was present at the sale, and had a conversation with Wade, in which he proposed to purchase a mule of him. Wade told him if he did not buy a mate for his mule at the sale, he would sell him his, and after the sale Wade declined

selling. This was all the testimony for the plaintiffs, and it appears from it, there was a complete agreement to buy on the terms proposed—'a bargain was struck,' and there can be no doubt, had Wade tendered the security and demanded the mule, he could have recovered in trover or replevin on refusal by Moffett to deliver it up. * * * The property was Wade's, but he had no right to the possession of it until he had complied with the terms of the sale, or otherwise satisfied the price. Moffett had a right to keep the mule until they were paid or made secure, but had no right to sell to another without first having notified Wade that they should do so, if he did not comply with the terms of the sale. But it would seem they could not have an action against Wade for the price, even after the term of credit had expired, according to the rule in Noy's Maxims, until they had delivered the mule to Wade, or tendered him, and the case of *Potter v. Coward,* Meigs (Tenn.) 26, proceeds on this ground. The other cases do not, and we think as the sale was perfect between the Moffetts and Wade, the Moffetts could sue for the price, after the credit expired, without a delivery or offer to deliver, because the law giving them a lien on the mule, it would be unreasonable to require them to relinquish it before they were paid the price agreed. According to the cases cited, had the mule died, or been lost, Wade would have to bear the loss. It is argued that the Moffetts should have given Wade notice to take the mule, and give his bond and security by a day named, and if he did not, they would sell the mule at public sale, and charge him with the difference in the price if the sale was at a loss, and so, too, after the terms of credit had expired. This the plaintiffs might have done. Chitty on Contracts, 431. They had an option, and having chosen to sue, and the instructions to the jury being right, we cannot interfere."

It follows that the sale was complete at the fall of the hammer. True, appellee had the right to retain possession until the purchase price was paid or secured as required by the terms of the sale. *Lucas v. Wallace*, 42 Ill. App. 172-174. Nevertheless the sale was complete and the risk of loss was on appellant. *Sidwell v. Lobly*, 27 Ill. 438, 439-440. The sale being complete, the appellee had no right to sell to another without first notifying appellant. *Wade v. Moffett*, *supra*. Instead of doing this, he made the sale and then notified appellant.

The trial court having adopted the theory of appellee in the trial of the case, it follows that the judgment should be reversed.

It is not necessary to consider other matters presented by the assignment of errors.

*Reversed and remanded.*