(No. 14499.—Appellate Court reversed; municipal court affirmed.)

THE COMMONWEALTH TITLE INSURANCE AND TRUST COMPANY, Exr. Defendant in Error, *vs.* WILLIAM L. GREGSON, Plaintiff in Error.

*Opinion filed June 21, 1922.*

1. SALES—*title may be transferred without delivery of possession.* The Uniform Sales act has not changed but has re-enacted the common law rule that delivery of possession is not necessary to the transfer of title to goods sold, and the completion of the bargain is all that is requisite, the question being entirely one of intention.

2. SAME—*what necessary to relieve vendor of responsibility for goods delivered to carrier.* To relieve a vendor of responsibility for the loss of goods delivered to a carrier for the vendee, the law requires the vendor, unless otherwise authorized by the vendee, to exercise due care and diligence to provide the vendee with a remedy against the carrier.

3. SAME—*when vendor must suffer loss of goods delivered to carrier.* Where the vendor promises the vendee in shipping goods to an ocean port for export to take out a through export bill of

lading, but the vendor being unable to get such a bill of lading from the railroad company nevertheless ships the goods, which are lost in transit before reaching the ocean port, the vendor can not recover the price of the goods from the vendee, as the default of the vendor authorizes the vendee to decline to treat the delivery to the carrier as a delivery to himself.

WRIT OF ERROR to the First Branch Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. CHARLES A. WIL-LIAMS, Judge, presiding.

McARDLE & McARDLE, for plaintiff in error.

URION, EARLY & URION, and FYFFE & CLARKE, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Commonwealth Title Insurance and Trust Company, executor of the will of George J. Roesch, deceased, brought a suit against William L. Gregson in the municipal court of Chicago and appealed from a judgment in favor of the defendant to the Appellate Court, which reversed the judgment and rendered judgment in favor of the plaintiff for $2210.32, the amount of its claim with interest, and for costs. Upon the petition of the defendant a writ of *certiorari* was awarded to bring up the record for review.

The plaintiff in error was a provision broker in Chicago and F. C. Reed was a broker in Philadelphia, where George J. Roesch was doing business under the name of Roesch Packing Company. On May 26, 1916, Gregson sent out a circular inviting offers of certain quantities of provisions for which he had inquiries, among others 100 barrels of plate-beef. On May 29, Reed, referring to the circular, telegraphed an offer of 117 barrels of family plate-beef at $17, and asked bids for seven barrels of family back-pork. On May 31 Gregson telegraphed Reed an order to book

100 barrels family beef at $17, and the same day wrote him a letter inclosing a confirmation, as follows:

"We hereby confirm our purchase made through you from the Roesch Packing Co., Philadelphia, Pa.

"Quantity—100 barrels.

"Articles—Family plate-beef (26-28 pieces).

"Specification—Strictly new cure, strictly choice quality, new cooperage, heavily salted, proper saltage allowance, packed suitable for export, for arrival at New York not later than June 19. This shipment to be accompanied by government certificates and declaration.

"Route—Included with shipping instructions.

"Shipping instructions—From W. L. Gregson & Co., later.

"Collection—W. L. Gregson & Co., 607 Insurance Exchange Bldg., Chicago, Ill. All papers to be sent to this office.

"Price—$17 per barrel Philadelphia.

"Brokerage—½%."

Thereupon Roesch got the 100 barrels ready for shipment, had it inspected, re-packed it, coopered it, put heavy caps on the barrels, had it marked, got a certificate for it and held it ready waiting for shipping instructions. On June 6 Gregson wrote Reed that Rumsey & Co., for whom the beef was bought, requested him to ask Roesch if he would take out a through export bill of lading for them for the 100 barrels of beef, pre-pay freight through and include their invoice, stating that it was necessary to ship open to Scandinavian ports; that the buyer had engaged ocean room and would furnish the contract; that the shipment should go via New York, care Norwegian-American Line, steamer Bergensfjord, June 24, to Christiania. Gregson requested an answer "whether or not Roesch Packing Company can do this, and if not, will have to make arrangements here." Rumsey & Co. also requested information as to what road Roesch intended to ship to New York. On June 9 Reed wrote to Gregson that Roesch would take out the through bill of lading but must draw on some person for the beef and freight. On the same day Gregson telegraphed Reed asking if Roesch would take out the through bill of lading, and the next day, on June 10, Reed tele-

graphed, "Roesch will take out through bill of lading shipping Reading road." On June 10 Gregson wrote to Reed a letter asking him to follow out the instructions of Rumsey & Co., which were attached, in taking out the through export bill of lading, shipping it open and pre-paying the freight, and directing him to draw on Gregson with all papers attached, noting that Roesch would ship by the Reading road. The instructions stated that the shipment must be in New York by Monday morning, June 19, and requested shipment about June 15, and that the seller ask the railroad to have their copies of the bill of lading in New York by that time. The letter repeated the directions to follow instructions fully in taking out the through bill of lading, shipping it open and pre-paying through freight. A letter was enclosed to the freight agent of the Pennsylvania Company for storage, with the request if the seller did not ship by the Pennsylvania Company to ship by any good line and change the letter to the railroad by which he did ship. The ocean contract was enclosed with the letter. The beef was directed to be consigned to the Government Food Commission, Christiania, Norway, but directions were given by a later letter to change the consignee to the Christiania Food Commission. In accordance with these instructions, Roesch on June 15 offered the beef for shipment to the Pennsylvania Railroad Company, which refused to receive it except for transportation to New York or to issue an export bill of lading, upon the ground that through shipment to the foreign port could not then be made. Roesch then shipped the goods by the Pennsylvania railroad upon a domestic bill of lading to New York, consigned to the Christiania Food Commission, Christiania, Norway, in care of the Norwegian-American Steamship Company, steamer Bergensfjord, in which Gregson had an ocean contract for space for the beef, and pre-paid the freight, $36.63. The railroad company agreed that the shipment should be delivered to the Norwegian-American Line at New York not

later than June 19, and in time to connect with the steamer Bergensfjord of that line, sailing June 24. Roesch wrote to the steamship company the same day and the next day talked to the agent on the telephone, telling him that the goods had been shipped by the Pennsylvania railroad, which would not issue a through bill of lading and the steamship company would have to take care of it, and the agent answered that they would. Reed telegraphed Gregson on June 15, "Shipping beef Pennsylvania railroad, Reading could not handle." The beef was never delivered to the Norwegian-American Line but was lost in transit. On June 21 Gregson telegraphed Reed that no papers had been received and inquired when the car was shipped, to which Reed replied that the delay was caused by waiting on the New York end of the Pennsylvania road for the through bill of lading; that it could not be secured in Philadelphia. On June 22 Gregson sent a telegram to Reed, "Papers not received, advise," to which Reed answered, "Car shipped June fifteen papers waiting through bill of lading Pennsylvania railroad New York." The same day Gregson wrote a letter to Reed acknowledging receipt of the telegram and saying further: "From your wire I understand that the through bill of lading had to be taken out at New York instead of Philadelphia, and, of course, if this is correct this is the reason for delay."

The defense which was relied upon was that Roesch did not take out a through export bill of lading, as directed by the shipping instructions. No claim was made that there was any failure on his part to comply with the contract in any other particular. There is no disputed question of fact in the case. The defendant introduced no evidence, the contract was in writing, consisting of the correspondence of the parties by mail and telegraph, and the only question is whether the contract required Roesch to take out a through bill of lading before Gregson was bound to pay for the beef.

At common law no delivery of possession is necessary to the transfer of title to goods sold. The completion of the bargain is all that is requisite and the question is entirely one of the intention of the parties. (*Wade* v. *Moffett,* 21 Ill. 110; *Rhea* v. *Riner,* id. 526; *Kohl* v. *Lindley,* 39 id. 195; *Barrow* v. *Window,* 71 id. 214; *Hatch* v. *Standard Oil Co.* 100 U. S. 124.) The Uniform Sales act has not changed but has re-enacted this rule. The sale was of unascertained goods out of a larger quantity, and there was no appropriation of goods to the contract with the assent of the buyer, under which the property would pass by virtue of section 19, rule 4, of the Uniform Sales act. Roesch made no objection to the shipping instructions, but agreed to take out a through export bill of lading, to pay the freight in advance at the request of the buyer, who stated that if Roesch could not do so the buyer would himself make the arrangement. When Roesch made the shipment he learned that he could not get a through bill of lading at Philadelphia, and therefore he shipped the goods upon a domestic bill and made arrangement for a through bill upon their arrival in New York. Because the goods did not arrive he was unable to procure the through bill and was therefore unable to comply with the shipping instructions.

In order to relieve a vendor from responsibility for the loss of goods delivered to a carrier for the vendee, the law requires the vendor, unless otherwise authorized by the vendee, to exercise due care and diligence to provide the vendee with a remedy against the carrier. (*Stafford & Bro.* v. *Walter & Skelton,* 67 Ill. 83; *Miller* v. *Harvey,* 221 N. Y. 54.) This rule of the common law has also been declared by the Uniform Sales act, section 46 of which provides: "(2) Unless otherwise authorized by the buyer, the seller must make such contract with the carrier on behalf of the buyer as may be reasonable, having regard to the nature of the goods and the other circumstances of the case. If the seller omit so to do, and the goods are lost

or damaged in course of transit, the buyer may decline to treat the delivery to the carrier as a delivery to himself, or may hold the seller responsible in damages." Roesch was "otherwise authorized by the buyer." The shipping instructions, which by his acceptance of them and agreement to carry them out had become a part of his contract, required him to procure a through bill of lading. The contract which he made with the railroad company would have been reasonable if his contract with the buyer had not required him to make a different contract, but the buyer having required the delivery to the carrier to be under a specified contract, the seller could not make a delivery which would relieve him from responsibility unless he made such contract. Whether he was bound to accept the shipping instructions or not, he did accept them and agreed to carry them out. Having failed to do so and the goods having been lost he was not relieved from responsibility, but the buyer was authorized to decline to treat the delivery to the carrier as a delivery to himself.

It is argued that Gregson ratified Roesch's act in shipping on a domestic bill of lading by his letter of June 22, in which he stated that he understood that "the through bill of lading had to be taken out at New York instead of Philadelphia, and, of course, if this is correct this is the reason for delay." This letter does not waive the requirement of a through bill of lading but does waive the delay occasioned by the inability to get it at Philadelphia and the necessity of waiting for the arrival of the beef in New York. Gregson had no reason to suppose, at the time he wrote the letter, that the through bill of lading would not be issued in New York. The steamship was not to sail until the 24th, and on that day Gregson telegraphed to Reed inquiring whether the through bill of lading had been issued and exchanged for the local. On June 25 he received a telegram from Reed saying, "Beef arrived on time, Roesch mailing local bill of lading." Gregson was not bound to

treat the delivery of the beef to the Pennsylvania Railroad Company as a delivery to him, and the property not having passed to him he was not bound to pay for it.

The judgment of the Appellate Court will be reversed and that of the municipal court affirmed.

*Judgment of Appellate Court reversed.*
*Judgment of municipal court affirmed.*