Chicago Paper Company, Appellee, v. Grigsby-Grunow-
Hinds Company, Appellant.

Gen. No. 34,640.

Opinion filed May 19, 1931.

THEODORE A. KOLB, for appellant.

CULVER, ANDREWS, SEITER & GILMORE, for appellee; ORVILLE R. SEITER, of counsel.

MR. JUSTICE KERNER delivered the opinion of the court.

Action was brought by plaintiff, Chicago Paper Company, against defendant, Grigsby-Grunow-Hinds Company, to recover the contract price of 814 pounds of paper delivered, and for 4,033 pounds of paper offered to be delivered. Tried before a jury and a verdict and judgment in favor of the plaintiff for $2,908.94, from which the defendant appealed.

The statement of claim sets forth that on July 7, 1926, defendant delivered to plaintiff a written order

RO–3170 for 5,000 pounds of #1,500 condenser tissue 6″ dia. 2–5⁄8″ thick 1–1⁄8″ core, price .70 lb. net F. O. B. our plant, subject to the following conditions:

"1. All orders not acknowledged within three days of receipt may be cancelled."

That on July 13, 1926, plaintiff delivered the following letter to the defendant:

"July 13, 1926.

Grigsby-Grunow-Hinds Co.,
Chicago, Illinois.
Gentlemen:

We acknowledge with thanks your order RO–3170 which we have entered as follows:

5,000 lbs. 2–5⁄8″ width, .00056 to .00064, #1500 Condenser tissue, outside diameter to be 6″, but not to exceed 7″

1–1⁄8″ core @ 70c per lb. net 90 days

Shipment will be made

1,000 lbs. to come from N. Y.

4,000 lbs. to come from mill

Remarks:

The above is an exact copy of the entry of your order on our records. If you desire to make any corrections or changes, please notify us at once.

The fulfillment of this order or contract is contingent upon strikes, fires, accidents, or other causes beyond our control. All goods sold subject to trade customs.

Yours very truly,
Chicago Paper Company
By H. B. Ingersoll."

That defendant did not at any time notify plaintiff that it desired to make any change or corrections of the terms of sale as stated in plaintiff's letter of July 13, 1926, that defendant retained plaintiff's letter and assented to the terms therein outlined and on July 30, 1926, inquired of plaintiff when the first 1,000

pounds of said paper would be delivered. That on August 7, 1926, plaintiff delivered to defendant 814 pounds of said paper, which defendant accepted and used; that on September 13, 1926, plaintiff offered to deliver to defendant an additional 4,033 pounds of paper, and has at all times since been ready, and is now ready and willing to deliver the same and hereby again offers to deliver the same but that defendant always had and still does refuse to accept the same. That all of said paper, delivered and undelivered, was identical and corresponded with the description of said paper "as specified in said contract of sale dated July 13, 1926," and that all of said paper was merchantable No. 1500 condenser tissue paper.

The affidavit of merits admits giving the order and the receipt of plaintiff's letter of July 13; that the order of July 7 provided for cancellation of the order unless the same were acknowledged within three days; that the same was not acknowledged in three days; that it subsequently did cancel it and that defendant is therefore not liable for paper not actually delivered; admits 814 pounds of said paper was received but in co-operation with the plaintiff was used for experimental purposes; that prior to August 20, 1926, defendant informed plaintiff that it would not give an order for paper until it had had a chance to try out at least another 1,000 pounds of said paper; alleges that prior to August 26, 1926, it notified the plaintiff that the trials being made with the sample shipment were unsatisfactory and that the paper was developing leaks. That at the time plaintiff delivered the paper to the defendant for experimental purposes it informed defendant that by signing an order calling for No. 1500 condenser tissue the paper previously experimented upon would be duplicated; that defendant relied upon this representation, but that the paper actually delivered and that tendered for delivery was not

the same paper as that which defendant had experimented upon. That plaintiff represented to defendant, before July 7, 1926, that the paper defendant had experimented upon was all linen, but that it would not be necessary to specify that on the order and that by simply ordering No. 1500 paper all linen paper would be ordered and furnished; that defendant relied on this statement and believed the same, and executed and signed the order, but that the paper thereafter delivered and tendered for delivery was not all linen paper. That prior to July 7, 1926, defendant advised plaintiff in detail of the purpose for which the paper was desired, and explained the tests which it would have to meet and the conditions and purposes for which the same was to be used; that plaintiff informed defendant that if it would order paper by designating it as No. 1500, that paper would be delivered which would be satisfactory and meet the requirements and tests of the defendant and would be usable for its purposes; that the paper was not usable for said purposes.

The material facts are that the plaintiff is a broker handling a general line of paper, and defendant is engaged in the manufacture of radios. During the autumn of 1925, E. V. Hadley, an employee of F. C. Strype, offered to sell to defendant a condenser tissue paper and sample rolls were delivered, which defendant subjected to tests, covering a period of months. These tests showed the paper to be satisfactory for the purpose for which the defendant intended to use it. This paper was manufactured in Germany. Between the fall of 1925, and June, 1926, Strype had abandoned the sale of condenser paper in Chicago, but arranged with plaintiff to represent him in the sale of paper in Chicago. In June of 1926, Harold B. Ingersoll, salesman for plaintiff, was requested to send defendant a sample of the condenser tissue and five or six rolls were delivered about June 20, 1926, which were also

subjected to tests. About July 2, 1926, Hadley and Ingersoll jointly called on defendant and informed an employee of defendant that plaintiff had taken over the local distribution of the Strype tissue and that all negotiations in the future about Strype paper would be handled by plaintiff, and that the samples which Hadley had submitted and those that Ingersoll submitted were the same. On July 7, Hadley and Ingersoll called again and talked with Mr. Grunow who was informed by Sidney P. LeMonier, one of defendant's employees, that the test was satisfactory, and thereupon the order for the 5,000 pounds was given. On August 8, 1926, 814 pounds of the paper were delivered and used. On August 26, 1926, plaintiff was informed the paper was not satisfactory, that it was developing leaks of electricity and did not properly insulate, and plaintiff was advised the order was canceled and that no further paper would be received; the 4,033 pounds of paper refused by defendant was the same as the 814 pounds delivered. Defendant did not examine the undelivered paper. At the time defendant informed plaintiff the order was canceled, the paper was on its way from Germany and it reached the Chicago warehouse during the middle of September, 1926.

There was evidence on behalf of defendant that between September 7, 1926, and the spring of 1927, defendant made further tests, but was of the opinion that the paper was not serviceable and usable and persisted in its refusal to accept the 4,033 pounds of paper, and there was evidence on behalf of plaintiff that it was serviceable and usable. There was evidence that before the order was given the defendant conducted Ingersoll through its condenser manufacturing plant, and showed him its machinery and processes, and that Ingersoll informed defendant that the paper he had sold would be serviceable and usable for the purpose for which it was intended, but this was denied by

Ingersoll. There was also evidence on behalf of defendant that before it placed the order it was informed by Ingersoll that the paper was all linen, but Ingersoll denied this and testified that he did not know of what the paper was made. Sidney P. LeMonier, an employee of defendant who had made the tests, testified no one said anything about the paper being all linen and that Hadley said it was a secret process that he was not at liberty to disclose.

From an examination of all the evidence we are of the opinion that the defendant in purchasing the paper relied on its own judgment and its own tests.

Defendant's counsel takes the position and strenuously argues that the verdict is contrary to the evidence, because the title to the paper did not pass, therefore the measure of damages is the difference between the contract price and the market price, and that there is no evidence in the instant case, of such damages. In making this contention he cites clause 2 of section 64 of the Uniform Sales Act (Cahill's St. ch. 121a, ¶ 67), which provides that the measure of damages is the estimated loss directly and naturally resulting in the ordinary course of events from the buyer's breach of contract. Section 18 of the same Act provides that in a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred, and for the purpose of ascertaining that intention, regard shall be had to the terms of the contract, the conduct· of the parties, usages of trade and the circumstances of the case. Clause 5 of section 19 of the same Act, Cahill's St. ch. 121a, ¶ 22, provides:

"If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, . . . the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

Defendant's counsel argues that the order called for the delivery of the paper at the plant of the defendant in Chicago; that the paper reached plaintiff's warehouse in September, 1926, and notwithstanding it had refused to accept the paper, since the plaintiff did not notify defendant that the paper would be thereafter held by the plaintiff as bailee for defendant, the plaintiff cannot recover under the evidence in this case. We cannot agree with defendant. It is clear that on August 6, 1926, while the paper was on its way from Germany, defendant informed plaintiff that the order was canceled and that it would not receive the paper. Defendant in its brief and argument admits that the paper was on hand in Chicago in September and could have been delivered. It was, therefore, unnecessary for plaintiff to deliver the paper to defendant's plant at Chicago. It is also clear that plaintiff had performed all of its obligations under the contract and the title vested in defendant (*Wade v. Moffett,* 21 Ill. 110; *Commonwealth Title Ins. & Trust Co. v. Gregson,* 303 Ill. 458), and plaintiff was entitled to recover the contract price because it was ready and able to deliver and offered to deliver the paper (section 51, Uniform Sales Act, Cahill's St. ch. 121a, ¶ 54), and defendant's refusal to accept delivery relieved plaintiff from making actual delivery. (*Osgood v. Skinner,* 211 Ill. 229; *Norton Iron Works v. Wilson Steel Products Co.,* 232 Ill. App. 523; *Interocean Mercantile Corp. v. Sawyer Biscuit Co.,* 253 Ill. App. 551, and cases cited.) The title to the paper having vested in defendant, it being the kind specified, section 63 of the Uniform Sales Act (Cahill's St. ch. 121a, ¶ 66) is applicable here, which provides:

"Where, under a contract to sell or a sale, the property in the goods has passed to the buyer, and the buyer wrongfully neglects or refuses to pay for the goods according to the terms of the contract or the sale, the seller may maintain an action against him for

the price of the goods." (See also *Santa Rosa-Vallejo Tan Co. v. Kronauer & Co.,* 228 Ill. App. 236.)

As additional grounds for reversal, it is urged that the jury disregarded the instructions of the court, and adopted some rule of their own for ascertaining damages. At the request of defendant, the court instructed the jury that the measure of damages for the undelivered paper was the difference between the contract price and the market value. These instructions did not, under the pleadings, state a proper rule, but as the defendant requested the instructions and the verdict is, in our opinion, in accordance with the law and the evidence, it will not be disturbed, and defendant cannot be heard to complain. (*Luken v. Lake Shore & M. S. R. Co.,* 248 Ill. 377; *Kellner v. Schmidt,* 328 Ill. 426.) The words of the court in *Faulkner & Co. v. Centralia Bottling Works,* 234 Ill. App. 9, are applicable here. The court said (p. 15):

"We do not know just what elements went into the amount found by the jury but in any event the amount is not in excess of what the jury under proper measure of damages would have been justified in finding in case they found the facts in favor of appellee."

It is next contended that there never was any contract between the parties, for the reason that the order of July 7 contained a condition that unless it was acknowledged in three days it could be canceled by defendant; that it was not acknowledged until July 13. It is undisputed that defendant received plaintiff's letter of July 13; that it retained it and made no objections to its terms, and on August 8, 1926, received the 814 pounds of paper. We are of the opinion that the receipt of the letter of July 13, holding and acting under it, is equivalent to its formal execution. (*Vogel v. Pekoc,* 157 Ill. 339; *Sellers v. Greer,* 172 Ill. 549.)

We are not impressed with the assignment based on the admission of the testimony of the witness J. C.

Miller. He was called as a witness for plaintiff in rebuttal. Defendant objected to his testifying on the ground that his testimony was not rebuttal, and that he had been in court in violation of the rule excluding the witnesses. It does not appear that any harm to the defendant resulted from a violation of the rule. Whether a witness shall be permitted to testify in rebuttal rests in the discretion of the court. The court did not abuse its discretion in permitting this witness to testify.

We have examined all of the remaining suggestions made by the defendant and relied upon by it for a reversal of the judgment and are satisfied that no reversible error was committed by the court.

For the reasons stated the judgment will be affirmed.

*Affirmed.*

SCANLAN, P. J., and GRIDLEY, J., concur.