## MOORE v. DE GUIRE.

### No. 11.

Circuit Court of Appeals, Second Circuit.

Argued Nov. 10, 1941.

Decided Jan. 15, 1942.

Mudge, Stern, Williams & Tucker, of New York City (Thomas C. McConnell, of Chicago, Ill., and Paul D. Miller and Stuart H. Steinbrink, both of New York City, of counsel), for appellant.

Addison S. Pratt, of New York City (Mendel Zucker, of New York City, of counsel), for appellee.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This is a suit in equity to rescind a contract, and the sale thereunder, of corporate stock and to require the purchaser, George N. DeGuire, to return the stock to the plaintiff and account to her for dividends or profits derived therefrom. Federal jurisdiction rests on diverse citizenship. From a decree of dismissal the plaintiff took an appeal, during the pendency of which Mr. DeGuire died. His executrix has been substituted as appellee.

The theory of the plaintiff's case is that she was induced to make a contract to sell to Mr. DeGuire her shares of stock in Ajax Hand Brake Company under circumstances which rendered the contract and the sale executed thereunder voidable. She claims, first, that her contract was induced by a violation of fiduciary duty on the part of her trusted attorney and agent, Mr. Lee, and that Mr. DeGuire had knowledge thereof, thus rendering her contract with him voidable. As as alternative, she claims a direct fiduciary relationship between Mr. DeGuire and herself and a breach thereof by him which induced her contract. The District Court considered the evidence in a lengthy opinion, made detailed findings of fact, and concluded that neither contention of the plaintiff was proved. The appeal is in large measure an attack upon the court's findings. They are too voluminous to be here set out in full. So far as necessary we shall refer to them in their appropriate setting during the course of our discussion. As an introduction to such discussion a greatly abbreviated outline of the facts will suffice.

Ajax Hand Brake Company was organized in 1925 by Charles B. Moore, whose death occurred in November, 1929. At that time the stock consisted of 1,000 shares of which Moore held 750 and George N. DeGuire 250. After Moore's death various claims were presented to his widow, who was also his executrix and residuary legatee, which resulted in a settlement dated January 31, 1930, under which the stock of Ajax was increased to 10,000 shares and was distributed as follows: Mrs. Moore, 4,000, Mr. DeGuire 4,000, Mr. Lee 881.7, and Mr. Bosworth 985. The few remaining shares were held by Mr. Ludlow, whose interest may be disregarded for the purposes of this case. In May, 1930, DeGuire was elected president of Ajax and continuously held this office thereafter, without salary; he received the same commission as formerly upon orders he obtained. Several times between May, 1930, and November, 1935, Mr. DeGuire tried to buy the stock owned by Lee and Bosworth. They refused to sell unless Mrs. Moore also sold her stock. They had given her their promise not to sell unless she did. In November, 1935, negotiations began between DeGuire on the one hand and Lee on the other, representing Mrs. Moore, Mr. Bosworth and himself, which finally led to the sale which Mrs. Moore now seeks to set aside. The first offer, exhibit 4, named a price of $30 per share for each of three sellers but permitted Lee to receive all cash while Mrs. Moore and Mr. Bosworth would accept half cash and half in deferred notes. This offer was rejected by DeGuire. He countered with an offer of $25 per share, which they rejected. Fur-

ther negotiations resulted in an offer by DeGuire which was accepted about December 28, 1935, and later embodied in a formal contract. This offer gave Lee and Bosworth $30 per share for their stock and Mrs. Moore $25 for hers; Lee was to receive all cash while the other two sellers were to get part cash and part deferred notes maturing in one, two and three years, respectively, but payable earlier at DeGuire's option. The notes, however, did not carry DeGuire's obligation and if he failed to pay any note, the seller would merely get back the stock certificates which had been attached thereto and deposited in escrow. The formal contract signed by Mrs. Moore and Mr. Bosworth in effect gave DeGuire an option to buy their stock at the prices stated, and with the further provision that dividends declared on the stock during the term of the contract should be credited on the notes. Lee was not a party to the formal contract, as his sale was a cash transaction effected contemporaneously with delivery of the others' contract, namely, on January 16, 1936. During 1936 and 1937, Ajax earned about $42 per share and declared dividends aggregating $19 per share which was more than enough to pay off all the notes, the last of them being paid in December, 1937. Six months later Mrs. Moore commenced the present action.

■ As the transaction turned out it was a very poor bargain for Mrs. Moore. She sold for $25 per share stock which earned $42 per share while the contract was still executory, and 80 per cent. of the purchase price was paid by dividends declared on the very stock she sold. But obviously the fact that a sale turns out to be a poor bargain does not prove it voidable if the parties were dealing at arm's length. The appellant says they were not. Taking up her contentions in the inverse order of their statement in her brief, we first consider whether the sale resulted from the violation of any fiduciary obligation owed directly by Mr. DeGuire to Mrs. Moore. The trial judge found expressly that no fiduciary relationship or relationship of trust and confidence existed between them. We are asked to reverse this finding, but the facts the appellant relies upon appear to us wholly insufficient to upset it. The early letters of condolence written by Mr. DeGuire after Mr. Moore's death are of no significance. Cordial relations could not have existed after his presentation of the adverse claims settled in 1930 and her negotiation with the Carr brothers contrary to her oral understanding with him. Nor can it be found that Mr. DeGuire unfairly used his position as president of Ajax to better his bargaining position. He concealed no information concerning the affairs of the corporation or the value of its stock. There is nothing to show that he had reason to believe in December, 1935, that the company's business and profits in the next two years would be so much larger than in prior years. The orders on hand at the end of 1935 were not substantially more than at the end of 1934. Findings 88 to 94, inclusive, which are well supported by the evidence, clearly preclude the application of the doctrine of Strong v. Repide, 213 U.S. 419, 29 S.Ct. 521, 53 L.Ed. 853, and the other cases relied upon by the appellant. As to the claim that DeGuire coerced her into selling by threatening to resign and go with a competing company, we can find no evidence that he made any such threat to her. If Mr. Lee used this argument with the plaintiff, there is nothing to indicate that DeGuire knew it.

■ The next contention is that Lee was not only representing Mrs. Moore but without her knowledge was acting as the agent of DeGuire. This is contrary to finding 73. Again we are asked to reverse, although the finding is supported by the direct testimony of both Lee and DeGuire. The argument is that their testimony is contradicted by certain expressions in letters passing between them during the course of the negotiations which led up to the contract. Thus, Lee wrote in exhibit 14, "unless therefore, you can authorize me to go to Mr. Bosworth and Mrs. Moore with such a proposition as I suggested on December 2nd, * * * we will have to call the matter closed." The argument that these words made Lee the agent of DeGuire seems little short of ridiculous. Lee was asking DeGuire to make an offer on the terms suggested in Lee's earlier letter. If such an offer were made Lee would have something to present to the sellers for acceptance or rejection. In that sense he would be "authorized" to go to them. But he would not go as the buyer's agent any more than he would if the offer had been submitted to him without solicitation on his part. The other expressions relied upon are equally innocuous, and wholly insufficient to overthrow the direct testimony credited by the trial judge.

We pass now to the contention most strongly pressed by the appellant, namely, that Lee, as Mrs. Moore's attorney and agent, violated his fiduciary obligations in procuring her signature to the contract and that DeGuire stands in Lee's shoes with respect to the voidability of the sale because he knew that Lee was undertaking to act as Mrs. Moore's agent under circumstances making due performance of his duty in that regard adverse to his own interest as the seller of his stock. Undoubtedly Lee owed Mrs. Moore the duty of exercising good faith and loyalty in negotiating for the sale of her stock, but "one employed as agent violates no duty to the principal by acting for his own benefit if he makes a full disclosure of the facts to an acquiescent principal and takes no unfair advantage of him." American Law Institute, Restatement, Agency § 390, comment a. The trial judge was satisfied that no fraud was perpetrated upon Mrs. Moore and that no information was concealed which Mr. Lee was under any duty to reveal. It is not claimed that she did not fully understand the contract which she signed. She knew that Lee and Bosworth were to get $5 per share more than she was. Throughout the negotiations DeGuire had refused to pay more than $25 per share for her stock and so advised Lee, although he was willing to pay Lee and Bosworth $30 per share. This discrimination resulted from DeGuire's resentment against Mrs. Moore arising from a belief (however unjustified) that he had been treated unfairly in the 1930 settlement and in her dealings with the Carr brothers. Knowing DeGuire's attitude, it was no breach of trust for Lee to suggest in his letter of December 2nd that if an offer were made on those terms he would submit it to her. Everything was fully explained to her in the presence of her sons, and she was informed by Lee that she could get independent legal advice. It is argued that Lee concealed from her that she was in a superior bargaining position because she could sell regardless of Lee and Bosworth, while they were not legally free to sell without her. This is not substantiated. Lee and Bosworth were morally bound by their promise to her not to sell unless she did, but we see no justification for the claim that they were legally bound; the 1930 settlement incorporated no such promise. It is further urged that Lee committed a breach of fiduciary duty in leading Mrs. Moore to believe that DeGuire was willing to buy the Lee and Bosworth stock separately from hers, and that she might be left a minority stockholder. Lee wrote her in his letter of December 26th that, if she decided not to accept DeGuire's offer, he would continue to hold his stock and felt sure that Mr. Bosworth would do the same. He testified that he told her the same thing on the evening of the 26th. Mrs. Moore testified that he said that "he and Bosworth had decided to take $30 a share for their stock, but they did not want to leave me a minority stockholder." If this means that they had already decided to sell even though she did not, it was a fraudulent misrepresentation for Mr. Lee knew that Mr. Bosworth had not so decided. Apparently the trial judge did not accept Mrs. Moore's version of the conversation, for his opinion states that he is satisfied that no fraud was perpetrated upon her. No breach of fiduciary duty by Mr. Lee was proved.

Finally, the appellant contends that because of the relationship of the parties, the sale is voidable unless the defendant proves it fair to the plaintiff both in its negotiation and its terms. As already shown, there was no direct fiduciary relationship between Mrs. Moore and DeGuire other than that which the president of a corporation may owe to one of the shareholders whose stock he purchases. The argument that DeGuire stands in Lee's shoes and has the same burden of proof that Lee would have to carry if he had purchased the plaintiff's stock is not supported by the cases relied upon. They illustrate the principle expressed by this court in Irving Trust Co. v. Deutsch, 2 Cir., 73 F.2d 121, 125, where we said that "one who knowingly joins a fiduciary in an enterprise where the personal interest of the latter is or may be antagonistic to his trust becomes jointly and severally liable with him for the profits of the enterprise." We cannot see that that principle has any application to the case at bar. DeGuire did not "join" with Lee in submitting his offer to the three shareholders whose stock he wanted to buy. As buyer he was an adverse party to each of the sellers and Lee was not his agent in advising Mrs. Moore to sell. The burden of proof to show the sale voidable was on the plaintiff.

In our opinion, dismissal of the complaint was correct. The decree is affirmed.