## DE GUIRE v. HIGGINS, Collector of Internal Revenue.

District Court, S. D. New York.

Feb. 1, 1946.

John P. McGrath, of Brooklyn (Denis M. Hurley, of Brooklyn, of counsel), for plaintiff.

John F. X. McGohey, U. S. Atty., of New York City (Marvin M. Notkins, of New York City, of counsel), for defendant.

CLANCY, District Judge.

Plaintiff's intestate desired to buy out the other stockholders in a manufacturing company and they reduced their agreement to writing. The price of the shares owned by one Fay Moore was fixed at $96,000 and $43,904 of this sum was paid in cash at the execution of the contract. The balance of $52,096 was evidenced by four notes executed by plaintiff's intestate, all dated December 31, 1935. One was for $17,365 due on or before December 31, 1936, two were for $8,682 each, due on or before December 31, 1937 and a fourth was for $17,367 due December 31, 1938. The contract provided for the payment on fixed dates of sums calculated at five per cent on the unpaid amounts of the notes. The Harris Trust and Savings Bank of Chicago was named escrowee and Moore delivered her stock to it. The contract provided explicitly that DeGuire would not be liable under his agreement or otherwise upon any of the notes and that if default were made in payment of any note the note was to be delivered back to the maker and the corresponding stock certificate back to Moore. The contract provided that all dividends paid to Moore during its life would be credited by her upon the principal and interest of the next note thereafter to become due.

Thereafter the corporation paid a dividend of $28,000 to Moore, the owner of record of the stock. The check came from the hands of DeGuire who was the active officer of the corporation. He had it certified and sent to the escrowee bank which delivered up the Moore certificates thus paid for by the contract's terms. There was a later transaction of precisely the same nature. An income tax was assessed against the estate of decedent on the amounts of these dividends and this suit is to recover the tax which was paid.

The contract between Moore, Bosworth and DeGuire stated an option. Moore v. DeGuire, 2 Cir., 125 F.2d 486. The size of the down payment is immaterial. DeGuire nowhere in it agreed to buy and he stipulated that the stock was "stock owned by" the other contractors. His later letter to the bank characterizing the transaction is irrelevant to his agreement with Moore and contradicts it. Furthermore collateral supposes debt, something that did not exist between them, since the contractors explicitly disclaimed any liability of De-

Guire's upon either the contract or the notes. So that the notes were not merely unenforceable, they were not obligations. The arrangement with the selected escrowee is consonant only with an option in default of an explicit obligation to buy. Bakke never was an agent. He was secretary of the corporation. DeGuire did not even have a remote beneficial interest in Moore's stock. She and Bosworth were to control the board of directors until half their stock was bought when they would be minority holders anyway. She never agreed to vote or have any director vote for any dividend.

The requirement for payment of interest if thought to indicate a concluded bargain is at odds with every other provision in the contract which must be read as a whole. The contract required DeGuire to pay 5 per cent semiannually on the notes he executed and conditionally delivered to the escrowee. He actually paid 5 per cent of the unpaid outstanding notes in June and on the purchase date. There was no subsisting obligation at any time to pay any of the notes and no obligation ever subsisting under the contract to pay any sum—as we have said, such obligations were explicitly denied. The notes never were paid. Credit against the purchase price when the dividends were paid obviated any need to pay them and DeGuire's agreement to purchase was signified not by any agreement to pay money but by his vote for a dividend. So debt never subsisted between Moore and DeGuire to which the so-called interest could be an incident. The contract is drawn ineptly from the Moore standpoint and its execution occasioned litigation. Moore v. DeGuire, supra. We can only conclude that it was in the minds of the contracting parties that if and when DeGuire agreed to buy he would then have to pay the amount that would then be due if he had bought on the contract date, in which event the unpaid balance would have been a debt. The so-called interest was a penalty to fit his delay in seizing the option calculated upon a percentage of the agreed price. The draftsman called it interest and DeGuire paid it. The interim payment on June 27, 1936 kept the option alive. The payment in December was part of the price as the parties agreed to calculate it.

An option is an offer to sell and when DeGuire approved the voting of the 1936 dividend on December 1, 1936, he accepted the offer as to 1999 shares since the dividend when paid must necessarily reduce the price of that many shares to the amount paid. The so-called interest thereon was accelerated thereby. Moore was a director and though apparently not present at the meeting, her contract had left it open to DeGuire to so indicate his acceptance of her terms. Moore and DeGuire were then bound by a contract of sale. This contract was conditioned by the terms of the offer in the option contract, to take effect on the payment of the dividend to the stockholder, for that contract says that the credit owed by its recipient upon the purchase price was to be effected when the dividend was paid. Section 18 of the Uniform Sales Act, Chapter 121½, Illinois Revised Statutes of 1939. Under the Illinois cases the Uniform Sales Act is held to mean that the conditioning of a contract to sell is a matter of intention of the parties as it was a common law. Commonwealth Title Ins. & Trust Co. v. Gregson, 303 Ill. 458, at 463, 135 N.E. 715. DeGuire chose to deliver the dividend check to the escrowee which accepted and thereby then became Moore's agent, an assumed authority which she confirmed by her conduct. Therefore the stock, up to the time Moore's dividend check was delivered to the bank by DeGuire to obtain the credit on the purchase price, was Moore's and the dividend was always Moore's. DeGuire never assumed liability on his notes and never paid them. His letter of December 17, 1936 misapprehends or misstates his own transaction. His only obligation under the option was to pay a sum of money calculated at 5 per cent on so much of the named price as was then due.

DeGuire had no beneficial interest in the dividend or the proceeds of the corporation's check for it. He enjoyed the spending or the use of not a single nickel of its proceeds which went into the Moore bank deposit. The corporation had no interest in the identity of its stockholders. DeGuire did not control the board of direc-

tors in 1936. Who they were in 1937 does not appear. What DeGuire got was a reduction in the price of the stock in a company whose assets had been correspondingly depleted. The credit allowed him on the purchase price would have been an element in determining its cost but that is its only effect. Taxes are imposed on gains. We can discern no gain received by DeGuire in the transaction and assessing and collecting an income tax for his part in buying the Ajax stock was done in error. The stipulation of facts, p. 41, makes what we have said apply to the 1937 dividend. It would seem to have been paid on the day when it was declared but the date of the actual contract to sell is not important in this case since the contract of December 31, 1935 stated only an option. Any contract of sale thereafter agreed on was necessarily conditioned on fulfillment of the 1935 contract's terms.